IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

REDONDO CONSTRUCTION CORPORATION

    Debtor

REDONDO CONSTRUCTION CORPORATION

    Plaintiff

     vs.

PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY

    Defendant

CASE NO. 02-02887(ESL)

CHAPTER 11

ADV. PROC. NO. 03-00192 (ESL)
ADV. PROC. NO. 03-00194 (ESL)
ADV. PROC. NO. 03-00195 (ESL)

OPINION AND ORDER

These adversary proceedings are before the court upon the *Brief as to [] Extended Home Office Overhead Damages* filed by Plaintiff Redondo Construction Corp. ("Redondo") (Adv. Proc. No. 03-00192 Docket No. 333, Adv. Proc. No. 03-00194 Docket No. 293 and Adv. Proc. No. 03-00195 Docket No. 265). Each adversary proceeding corresponds to a different project where Redondo intervened as a contractor: Adv. Proc. No. 03-00192 corresponds to project Desvío Sur de Patillas ("Desvío Sur de Patillas"), Adv. Proc. No. 03-00194 corresponds to PR 2 Mayaguez ("PR 2 Mayaguez"), and Adv. Proc. No. 03-00195 corresponds to Dorado-Toa Alta ("Dorado-Toa Alta"). Also before the court is Puerto Rico Highway and Transportation Authority's ("PRHTA") *Brief* on the home-office overhead damages, but only in regards to the PR 2 Mayaguez Project (Adv. Proc. No. 03-00194 Docket No. 209). PRHTA did not file briefs in Adv. Proc. Nos. 03-00192 and 03-00195. For the reasons stated below, Redondo's claims for home-office overhead damages are only allowed under the percentage-of-direct-costs approach.

-1-

Procedural Background

On January 13, 2014, this court entered an *Opinion and Order* (Lamoutte. B.J.) in the instant adversary proceedings granting Redondo pre-judgment interest at six percent (6%) under Article 1061 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3025, with an accrual period starting from the stipulated dates of substantial completion until PRHTA's final payment on the principal of the principal amounts for each project.  In regards to the home-office overhead damages, the court ordered as follows:

> Because the *Joint Stipulations* filed by the parties do not address whether the extra work performed by Redondo in the three projects were the result of "necessary but unanticipated work" or whether the delay did not arise from a need to perform extra work as mandated by the [Court of Appeals for the] First Circuit [the "First Circuit"], the court orders the parties to file additional stipulations to that effect or separate briefs making specific references to the evidence submitted during the trial to that effect and attaching copies of the same.

> If the extra work performed by Redondo in the three projects was the result of "necessary but unanticipated work" and the percentage-of-direct-costs method is applicable, the parties shall stipulate and/or brief the court on the percentage to be applied to the corresponding costs (via change orders and/or extra work orders) making specific references to the evidence submitted during the trial to that effect and attaching copies of the same.

> If the Eichleay[1] formula is to be applied, the court further orders the parties to stipulate the calculation of such damages and/or file separate briefs that include specific references to the evidence submitted during the trial to that effect and attaching copies of the same.

See Adv. Proc. No. 03-00192 Docket No. 321, Adv. Proc. No. 03-00194 Docket No. 282 and Adv. Proc. No. 03-00195 Docket No. 279.  The *Opinion and Order* (Lamoutte, B.J.) is published at 505 B.R. 388 (Bankr. D.P.R. 2014) and contains a detailed procedural background of these adversary proceedings.  The court granted the parties thirty (30) days to file the joint stipulations or briefs on the issue of home-office overhead damages.

---

[1] The Eichleay formula is the one established in In re Eichleay Corp., 1960 ASBCA Lexis 1207, 1960 WL 538 (Armed Services Board of Contract Appeals 1960).

-2-

On February 12, 2014, PRHTA filed its *Brief* in compliance with the *Opinion and Order* for the PR 2 Mayaguez Project.  See Adv. Proc. 03-00194 Docket No. 290.  It did not file a brief for the other two projects (Adv. Proc. Nos. 03-00192 and 03-00195) claiming that it "was [not] able to prepare [them] within the strict time constraints set by the [] court" (Adv. Proc. 03-00194 Docket No. 307, p. 5, ¶ 16).  PRHTA did not request an extension of time to file such briefs in those adversary proceedings.  In its only *Brief*, PRHTA sustains that the extra work performed in the PR 2 Mayaguez Project was the result of 39 change orders and 32 extra work orders agreed by the parties, and therefore, Redondo has already been compensated for home-office overhead damages through the direct-cost method, which excludes Eichleay damages according to the parameters established by the First Circuit.  In addition, PRHTA avers that there is no evidence that Redondo was stopped (totally or partially) from construction or that it was put in any kind of standby during the completion of additional work performed for the PR 2 Mayaguez Project.

On February 14, 2014, Redondo filed a consolidated *Brief* for all three projects in each of the instant adversary proceedings.  See Adv. Proc. No. 03-00192 Docket No. 333, Adv. Proc. No. 03-00194 Docket No. 293 and Adv. Proc. No. 03-00195 Docket No. 265.  Redondo's *Brief* offers a lengthy description of the problems and mishaps it confronted during the construction of each project.  Regarding the Desvío Sur de Patillas Project, Redondo contends that "some of the problems [it] experienced [] consisted of an under-run in the installation of the piles, with the surveying, the elevation of the decks, and design problems, such as the diaphragms and the beams" (Adv. Proc. 03-00192 Docket No. 333, p. 22, ¶ 68).  Redondo further stated that it had to submit "a revised claim to the PRHTA for $34,072.27 for the unrecovered expenses." Id. at p. 24, ¶ 74.  Redondo also submitted its final claim on February 21, 1995 to PRHTA "including the under-run on the piles and the additional expenses incurred in the construction ... as evidenced by 15 change orders and 22 extra work orders .... [s]aid Claim includes a net $254,252.36, plus a 10% profit factor of extended home-office overhead." Id. at p. 24, ¶ 75.  Redondo also notified the PRHTA of all the problems related to the worksite and admits that the

site condition "could not be predetermined prior to perfuming the activity" and that at the end of the activity it would submit a request for payment. Id. at p. 25, ¶ 80.

For the Dorado-Toa Alta Project, Redondo sustains that the major problem was the "de-watering problem in building the pier" (Adv. Pr. 03-00195 Docket No. 288, p. 26, ¶ 84). Redondo avers that it relied on the information provided by PRHTA and did not inspect the job site before placing a bid for it. Id. at p. 28, ¶ 96. Upon realizing the actual site conditions of the project, Redondo hired a consultant to evaluate the situation. Id. at p. 28-29. Redondo ultimately submitted a "claim for extended home-office overheard for $23,814.00 plus 10% profit factor ... following the Eichleay formula." Id. at pp. 29-30, ¶ 106.

For the PR 2 Mayaguez Project, Redondo acknowledges that "[t]he required change order and extra work orders were of such magnitude that the PRHTA agreed to extensions of almost three (3) times of the original contract time" (Adv. Pro. 03-00194, Docket No. 293, p. 15, ¶ 36). According to Redondo, the cause of the change orders and extra work orders, included: incomplete technical plans, insufficient technical information provided by PRHTA, and that the original plans did not comply with certain requirements set forth by other government agencies and differences in the terrain. Id. at 15, ¶ 38. Redondo asserts it had to subcontract Continental Lord, Inc. ("Lord") to perform the electrical work on this project. Id. at p. 16, ¶ 39. Redondo asseverates that "Lord was delayed approximately 453 days" by PRHTA and "was directed to stop[2] its work as to this activity when the problem [with the installation of the light post] arose until it was solved." Id. at p. 17, ¶ 42, and p. 18, ¶ 47. The stoppage was caused by a need to redesign some light poles at the behest of PRHTA. Id. Afterwards Redondo submitted to the PRHTA "32 extra work orders for around $2M" for "90 activities not contemplated in the original plans and specifications." Id. at p. 20, ¶ 59.

Finally, Redondo proposes that all the change orders and extra work orders in the projects constitute 'extinctive novations' and that PRHTA is now bound by them. Id. at p. 32, ¶ 115. Redondo contends that the "unforeseen extraordinary and unreasonable delay are not only

---

[2] This is the first and only mention of any delay in work or work stoppage in Redondo's entire consolidated *Brief*.

premised [] on the multiple change and extra work orders, but also on the extraordinary circumstances occurring [*sic*] during the performance of the contracts." Id. at p. 35, ¶ 125. Redondo claims that the percentage of direct-cost-method is inapplicable in the instant case and that all the unforeseen extraordinary and unreasonable delay caused them to be on standby. Therefore, Redondo concludes that the Eichleay requirements have been met, which entitles it to be compensated for Eichleay damages.

Applicable Law & Analysis

*(A)      Forfeiture of Claims and the "Law of the Case" Doctrine*

The First Circuit has ruled that "[a] party waives a right only if he intentionally relinquishes or abandons it; he forfeits a right by failing to assert it in a timely manner." Dávila v. Corporación de Puerto Rico para la Difusión Pública, 498 F.3d 9, 15 (1st Cir. 2007). A "waiver is different from forfeiture". U.S. v. Mangone, 105 F.3d 29, 35 (1st Cir. 1997). "Forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" U.S. v. Olano, 507 U.S. 725, 732 (1993), quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938). Moreover, even constitutional rights may be forfeited in criminal and civil cases "by failure to make a timely assertion of the right before a tribunal having jurisdiction to determine it". U.S. v. Olano, 507 U.S. at 731.

In the instant case, the court cannot find on the record any "extinctive novation" pleading or argument made by Redondo prior to the filing of its *Brief*. On the contrary, the court finds that such argument was made for the first time by Redondo at this advanced stage of the proceedings, that is, after the *Judgment & Mandate* issued by the First Circuit and the *Mandate* issued by the U.S. District Court for the District of Puerto Rico remanding these cases to this court for further proceedings consistent with the First Circuit's ruling. Furthermore, the First Circuit's instructions did not include any parameters on "extinctive novation" for this court's consideration. Therefore, the court deems Redondo's "extinctive novation" arguments forfeited. The court will strictly adhere to the First Circuit's remanded instructions, which now constitute the "law of the case".

*(B)     Extended Overhead Damages*

The First Circuit's remand instructions to this court are the following:

> In the case[s] at hand, the bankruptcy court employed <u>Eichleay</u> to calculate [Redondo's] extended overhead damages. <u>See</u> <u>Redondo</u>, 411 B.R. 89, 95 and 108 (Bankr. D.P.R. 2009).  But the court mixed apples and oranges; it used <u>Eichleay</u> across the board even though it found that at least some of the project delays were attributable to extra work for which the debtor was compensated.  <u>See</u>, *e.g.*, <u>id.</u> at 95, 97, 104-05.  For those delays, extended overhead should have been awarded as a percentage of the direct costs associated with the projects' change orders and extra work orders.  <u>See</u> <u>C.B.C. Enters., Inc. v. U.S.</u>, 978 F.2d 669, 675 (Fed. Cir. 1992) ("[I]t is inappropriate to use the <u>Eichleay</u> formula to calculate home-office overhead for contract extensions because adequate compensation for overhead expenses may usually be calculated more precisely using a fixed percentage formula.").
>
> ...
>
> On remand, the bankruptcy court is free to determine whether the debtor sustained uncompensated periods of delay and, if so, whether <u>Eichleay</u> damages are appropriate for any such periods.  In resolving this issue, the court should address the [PRHTA]'s argument that Federal Circuit precedent bars <u>Eichleay</u> damages here because work on the three projects was never fully suspended.  <u>See</u> <u>P.J. Dick Inc. v. Principi</u>, 324 F.3d 1364, 1371 (Fed. Cir. 2003).

<u>In re Redondo</u>, 678 F.3d at 124-125 (footnote omitted).

The *Opinion and Order* (Lamoutte, B.J.) entered by this court on January 13, 2014 applied the First Circuit's parameters and legal framework under which overhead damages would be considered:

> The First Circuit defined "extended overhead damages" as those that "compensate a contractor for unabsorbed home-office expenses that accrue during a delay caused by the owner."  <u>In re Redondo</u>, 678 F.3d 115, 123 (1st Cir. 2012).  "Overhead is commonly defined as those costs which are expended for the benefit of the business as a whole and which usually accrue over time ... overhead costs are therefore not directly attributable to specific contracts, for if they were, they would constitute direct costs."  <u>Aircraft Gear Corporation v. Kaman Aerospace Corporation</u>, 875 F.Supp. 485, 495 (N.D. Ill. 1995).  <u>Also see</u> <u>Southwestern Engineering Co. v. Cajun</u>, 915 F.2d 972, 978 (5th Cir.1990) ("extended overhead is a concept unique to construction contracting and is defined as the additional costs incurred when a job's performance period is prolonged").
>
> ...
>
> To calculate an award for extended overhead damages, the First Circuit distinguished between (a) projects where the delay is due to "necessary but unanticipated work" and (b) projects where the delay does not arise from a need

to perform extra work. In re Redondo, 678 F.3d at 124. When a project is delayed due to "necessary but unanticipated work" for which the contractor is entitled to compensation, extended overhead is calculated as a percentage of the direct costs of the additional work. "This percentage-of-direct-costs approach comports with standard practice in the construction industry under which a contractor normally charges an owner a percentage of a project's direct costs to cover its overhead." Id. at 124. Conversely, when a project's delay does not arise from a need to perform extra work, for instance, when the owner causes a total work stoppage, the percentage-of-costs approach would deny the contractor any overhead damages for the delay period. Id. In those instances, courts use the Eichleay formula, which "calls for multiplying the average daily overhead costs allocable to a project by the number of days that the project is delayed." Id.

In re Redondo, 505 B.R. at 402-403.

Thus, this court condensed the First Circuit's mandate into the following query:

The mandated task of this court is to find whether the delays in the three projects were due to "necessary but unanticipated work" (to which the court must apply the percentage-of-direct-costs approach) or whether the delay did not arise from a need to perform extra work (to which the court must apply the Eichleay formula). The query further translates into finding if Redondo was compensated for the extra work performed caused by the delay. See In re Redondo, 678 F.3d at 124. If the extra work was compensated, then "the extended overhead should [be] awarded as a percentage of the direct costs associated with the projects' change orders and extra work orders".

In re Redondo, 505 B.R at 403.

Upon the foregoing query, the court stated:

Because the *Joint Stipulations* filed by the parties do not address whether the extra work performed by Redondo in the three projects were the result of "necessary but unanticipated work" or whether the delay did not arise from a need to perform extra work as mandated by the First Circuit, the court orders the parties to file additional stipulations to that effect or separate briefs making specific references to the evidence submitted during the trial to that effect and attaching copies of the same.

If the extra work performed by Redondo in the three projects was the result of "necessary but unanticipated work" and the percentage-of-direct-costs method is applicable, the parties shall stipulate and/or brief the court on the percentage to be applied to the corresponding costs (via change orders and/or extra work orders) making specific references to the evidence submitted during the trial to that effect and attaching copies of the same.

If the Eichleay formula is to be applied, the court further orders the parties to stipulate the calculation of such damages and/or file separate briefs that include

specific references to the evidence submitted during the trial to that effect and attaching copies of the same.

In re Redondo, 505 B.R. at 408 (footnote omitted).

Redondo's own *Brief* reveals that although the three Projects faced considerable delays and unexpected work, they were processed with PRHTA through extra work orders and/or change orders. See Adv. Proc. 03-00192 Docket No. 333, p. 24, ¶ 75; Adv. Pr. 03-00195 Docket No. 288, p. 29-30, ¶ 106; Adv. Pro. 03-00194 Docket No. 293, p. 15, ¶ 36. In these adversary proceedings, the First Circuit ruled that when delays in a project are attributable to extra work performed, then the "extended overhead should [be] awarded as a percentage of the direct costs associated with the projects' change orders and extra work orders." In re Redondo, 678 F.3d at 124. The court rejects Redondo's contention that the percentage-of-direct-costs method is inapplicable to these adversary proceedings, especially when it acknowledged in its *Brief* that the delays were attributable to necessary extra work and it submitted claims for payment on all that extra work through change orders and extra work orders. Following the First Circuit's mandate, this court finds that the Eichleay formula is inapplicable to any of the projects in the three adversary proceedings.

Although Redondo vaguely mentions that its subcontractor Lord --not Redondo itself-- was delayed while the project was being re-designed, Redondo only references as evidence the transcript of a hearing held on February 26, 2007. Upon the examination of that transcript and the testimony of Mr. Angel Mercado from Lord, it is clear to the court that although he had to change the entire electrical design of the light post at the behest of PRHTA, Lord's proposal to make the required changes was approved through extra work orders for that type of work (Adv. Proc. 03-00192 Docket No. 110, p. 143, lines 13-19). Such extra work was unanticipated and necessary, making any claims under the Eichleay formula inapplicable.

PRHTA proposes that the percentage-of-direct-costs method must be applied in the instant case because Redondo was already compensated for the home-office overhead through change orders or extra work orders. See Adv. Proc. 03-00194 Docket No. 290, p. 23, ¶ 13. The

only evidence referenced by PRHTA is the transcript and testimony of Architect Redondo, who stated that "overhead [was] included in the total bid [for the Mayagüez Project]" (Adv. Proc. 03-00192 Docket No. 102, p. 26, lines 20-21).  PRHTA did not brief or evidence the inclusion of overhead in the other projects bids and/or how it compensated Redondo, if at all, for these damages.  Notwithstanding, pursuant to Redondo's assertions in its *Brief,* PRHTA's argument regarding the application of the percentage-of-direct-costs approach holds true for the other projects in the instant adversary proceedings.

<u>Conclusion</u>

In view of the foregoing, pursuant to the First Circuit's rulings and mandate, the court concludes the <u>Eichleay</u> formula is inapplicable to the instant adversary proceedings.  Redondo's claims for home-office overhead damages are only allowed under the percentage-of-direct-costs approach.  The court orders the parties to file joint or separate motions within 30 days providing evidence of how Redondo has already been compensated for overhead damages, if at all, through the percentage-of-direct-costs approach.  If Redondo has not been compensated through the percentage-of-direct-costs approach, the parties are hereby ordered to provide the calculation of such damages using that approach making specific references to the evidence submitted during the trial to that effect and attaching copies of the same.  Failure to do so as instructed will result in the court deeming these damages paid and/or forfeited.

SO ORDERED.

In San Juan, Puerto Rico, this 14th day of July, 2014.

Enrique S. Lamoutte
United States Bankruptcy Judge